number two. Rebecca Kerr's. Miss Kerr's, can you hear me? Yes, I can hear you. Please support actually one moment, please. OK, Mr Wagner. I'm here as well. All right, Madam Clerk, would you please call the next case for our? I can't see Mr Wagner, but hold on a second. Is there a problem with his video? Not on our end. If you can see him, if you unpin him and repin him, your honor, that might help. Now, all I see is DW, but if I can hear him, that'll be good enough. Please call the next case for argument. 20-1156 from the Western District of Missouri, United States versus Matthew Coy. All right, Miss Kerr's, we'll hear from you first. Thank you, your honor. My client, Matthew Coy, has been found incompetent to proceed to trial on a felon in possession of a firearm charge. He does not consent to treatment with antipsychotic medications. Therefore, the government is seeking to involuntarily medicate him under the Supreme Court. In this case, all of the government experts agree that Mr. Coy has an amphetamine-induced psychosis that has persisted for years past the point of intoxication. So even though he's no longer using methamphetamine three, actually five years now, three years at the time of the cell hearing, he was still experiencing psychotic symptoms. The defense expert, Dr. Somi, read the reports of the government experts and concurs with this diagnosis. The government and the defense expert also agree that if Mr. Coy is to be involuntarily medicated, it should be some type of antipsychotic medication. What they disagree on is the likelihood that the medication will actually restore Mr. Coy to competency. So the two issues here are the second factor in the cell case, whether there's a substantial likelihood of restoration, and the fourth factor, whether it is in Mr. Coy's best medical interest to be forced to take antipsychotic medication. I want to focus my argument today on the magistrate judge's report and recommendation. I'm looking at page 40 of the addendum. The magistrate judge gave three reasons as to why she thought the second factor on substantial likelihood was met by clear and was that involuntary medication was substantially likely to restore competency. Two, the judge relied on the cell appendix. That is the document that is attached to Dr. Grady's evaluation and said that that appendix, the cell appendix, described that the general outcome of competency restoration for groups of incompetent defendants is usually quite positive. And then finally, the magistrate judge said that the statistics that Dr. Coy provided in his testimony were also positive in favor of competency restoration. So going first to Dr. Grady's experience and training, when he testified at the cell hearing, I'm referring to pages eight and nine, he was asked to outline his experience with amphetamine induced psychosis. And he testified that he had seen a number of cases over the past three years. When pressed on how many cases he'd actually seen, he said it was less than five. When asked his success rate on those cases, he said he couldn't recall whether any patient had been treated successfully and restored to competency. He said, well, the clinical picture with that has been complicated. That was his quote. He said, I treat the same way that I would treat a patient with schizophrenia. When asked again, have people been restored to competency based on the course of treatment that you have outlined for Mr. Coy, have they been restored to competency? And again, he had to say, I don't have that information because I just don't recall the specific cases. Now, this was an expert that the government called. That's their direct examination of Dr. Grady. He knew that the issue in this case is whether you can successfully treat amphetamine induced psychosis with delusional disorders that persist for over three years. And he didn't bother to go back through his experience over the years and either look up or try to recall what the results were in those cases. Now, he testified as to his training and rather summary fashion. He's board certified in psychiatry. He's board certified in addiction. He did not say that he had any particular training specific to methamphetamine induced psychosis, however. After he gave the testimony that I just outlined, essentially the government attorney then read to him the four or five conclusions that he had made in his report and asked after each one of them, did I read that correctly? Is that your opinion? And Dr. Grady informed him that it was. There was no explanation given in testimony as to how he arrived at those opinions. And it's not particularly well described in his report either. The second thing that the magistrate judge relied on, excuse me, being the cell appendix that is attached to Dr. Grady's report. Just from looking at this, I think that it's apparent that this is a generic document that the Federal Medical Center and Butner uses in all cases for defendants who suffer from psychosis. The appendix spends a lot of time discussing relevant information that pertains to schizophrenia, which Mr. Coy does not have. He has, as I've said, amphetamine induced psychotic disorder. The cell appendix, and I'm looking at page two of 11, the top heading is data on competency restoration of psychotic defendants. There are approximately five studies there that the appendix refers to. They all seem to have some reference to psychosis, but there are only two that refer to delusional disorders. And that is what Mr. Coy has. The problem that renders him incompetent is delusional disorder. And then you have, so you have the Erbel and Stelmach study, and you have the Cochran study. And I discussed those two in depth at my brief at pages 30 to 33. But I want to make just a couple of points about those now. In each of those studies, the defendants that were treated, those who had delusional disorder were a very small number. So the sample size for these studies was very small. Now the sample size is included in the cell appendix. So the magistrate judge would have had that available to her, but she didn't necessarily have available to her what was actually said in those studies that countered this generally rosy picture that roughly 70% or more of all psychotic defendants can be restored to competency. The examiners in both the Erbel study and in the Cochran study admitted that their opinions may have been more in favor of favorable treatment. They were both retrospective studies, meaning there were no control groups. Without that, you can't establish a cause and effect relationship between the anti-psychotic medication and the restoration to competency. The Cochran study admits that because of the focus on the efficacy of treatment for rare disorders like delusional disorders. So what we have is a client with an extremely rare disorder, but that disorder, the amphetamine induced psychosis, is not addressed on any of the five studies that are on page two of the cell the likelihood of restoration competence. Well, substantially likely, and I didn't see any case saying, well, what is substantially likely? Is it over 50%? Is it over 60%? The clear and convincing evidence standard tells us that you have to have an abiding conviction that the truth of the factual contentions are highly probable. The evidence offered instantly tilts the evidentiary scales in the affirmative when weighed against the evidence offered in opposition. Well, how does the clear and convincing fit together with substantially likely? Well, I did not find any cases that answer that question. But I think that when you're talking about overriding a defendant who has not been convicted of anything yet, he's merely accused, overriding his constitutional liberty interest, you have to meet a high threshold. Now, the cases that I've seen that have referred to the studies that are listed in the cell appendix are generally citing 70% or higher, but there's no case that draws the equivalence and said, well, 70% is the number that must be reached. Now, what about the fact that you say your man has unusual conditions? That's right. Are you suggesting that if the government hasn't ever treated a large number of people with a given condition and brought them back to competency that they cannot make the necessary showing? Because that rule would mean that people with unusual conditions are basically outside of the cell procedure. I wonder if that's the logical implication of your position or whether there's some limiting principle on it. Well, that would be the logical position, for example, in a case where all they are relying on are the studies in the cell appendix. But take, for example, the Dillon case out of the D.C. Circuit and the Curtis case out of the Eighth Circuit, where in both of those cases, the defendant had been successfully treated before with that antipsychotic medication. So there was a track record. Take, for example— You mean voluntarily? The person had been treated voluntarily for purposes other than— In Curtis, I don't recall if it was voluntarily. If I remember correctly, he had a state case and he had been arrested on that. He was sent to a hospital and he was treated for a period of time with antipsychotic medication. So I think regardless of whether it's voluntary or involuntary in the past, that person has a proven track record. He has responded favorably before, and that's a good indicator for favorable response in future treatment. Other cases, I think you have to compare. Another limiting principle would be compare the actual type of psychosis that the person has. Schizophrenia is very different from methamphetamine-induced psychosis. Dr. Somi, in his testimony, made that clear. There's a constellation of symptoms. The delusions that a schizophrenic person has could be related to auditory-verbal hallucinations, not a fixed delusional disorder. They also have cognitive and mood impairments. So their chances of successful treatment is far better than someone who has a single fixed delusion. Also, in some cases that I saw—and I'm running way into my rebuttal here, so this will be my last point—but Mr. Coy's situation is somewhat unique in that his delusion pertains specifically to the facts of the underlying crime he is charged with. So take, for example, another case that the government cited—and I'm sorry I can't recall the name of it—but that particular defendant's delusion was that he owned the state of Alaska. He was charged with not registering as a sex offender. The two did not particularly have anything to do with one another. Now, he was found not competent, but Restoration is going to look at, can he assist his counsel as to the particular facts of the case? So that would be my answer to your question on committing principles. Thank you. Counsel, before you stop, let me ask you this question. What I've heard you argue this afternoon has to do primarily with the testimony of the government's expert. I haven't heard you make much reference to Dr. Somi, however you pronounce the name. And so am I correct about that, that you're attacking the government's evidence and you're not—this is not a question of comparison of the two experts and comparing their testimony or weighing the two expert opinions that we often get into sometimes when we have competing experts? You're correct. But even if Dr. Somi had not testified, I think that we would still win this group on the second and fourth cell factors. The testimony that Dr. Somi gave, I would, I don't know, characterize as cherry on the top of the ice cream. It just gives you a better understanding of why amphetamine-induced psychosis is so hard to treat. Thank you. Now, am I correct that Dr. Somi is a psychiatric pharmacist? That's true. And that he can't treat—he's not authorized to treat anybody. Is that right? Well, he testified that he's actually treated thousands of patients with schizophrenia and hundreds with drug-induced psychosis. What he does not do is prescribe, okay? So he's not the person who actually writes the prescription, but he is the person that is consulted on reaching the treatment plan. And if you look at Dr. Cochran's two reports in this case, you'll see that he mentions consulting with a psychiatric pharmacist as well. So there's no—the government's argument with respect to Somi's credentials, I think, is a red herring in this case. He is eminently qualified to testify about drug-induced psychosis, and he's treated—he has participated in creating treatment plans for hundreds of those individuals while Dr. Brady's experience is less than five individuals. Thank you. Thank you. All right. Thank you for your argument, Ms. Kurz. Mr. Wagner, we'll hear from you. May it please the Court. David Wagner for the United States. I'd like to jump right in where Ms. Kurz left off, talking about Mr. Somi. And Judge Shepard, you're absolutely right. He's a psychiatric pharmacist by statute, and that's 18 U.S.C. 4247B. A psychiatric pharmacist is not qualified to opine on a defendant's competency. Only a licensed psychologist or psychiatrist can do that. So I think it stands to reason if Dr. Somi can't determine whether or not Coy's competency, he's also unqualified to determine whether medication is substantially likely to restore him to competency. I think his opinion can be discounted on that ground alone. Also remember, he never met Mr. Coy. He reviewed only two of the four prior reports that had been generated. He talked about his experience in the literature, but he did not identify a single study that he was relying on. And let me pause there and just note that although Mr. Coy attacks the government's studies that show the effectiveness of antipsychotic medication across a range, a wide range, of delusional disorders, he has not produced one single study in this case that supports his position that the medication is unlikely to be successful. Anyways, returning back to Dr. Somi, his testimony, in fact, even though he's not qualified, to the extent the court decides to consider his testimony, the magistrate and district court were absolutely correct that his testimony, in fact, substantially supported the government's position in this case. What Dr. Somi said is that he saw hundreds of patients he treated. I don't really know what treated means, but he used that term, so I'll use that term. He, quote-unquote, treated hundreds of patients with drug-induced psychosis and thousands with schizophrenia. He said of those hundreds and thousands of patients, only 10 or 12 maintained their delusion in spite of abstinence from the drug in treatment, presumably referring to the drug that created the psychosis. So in other words, of the people he had seen, a minuscule percentage were not effectively treated by antipsychotic medication. And there's some back and forth in the briefs about whether the magistrate court correctly interpreted what Dr. Somi said during the hearing. I think the magistrate R&R got it absolutely correct and interpreted it correctly, but obviously the court can read his testimony and come to its own conclusion. So that's enough with Dr. Somi. I'd like to turn now to Dr. Grady, because unlike Dr. Somi, Dr. Grady is a licensed psychiatrist. He is, in fact, the chief psychiatrist at the Federal Medical Center in Butner. As was referred to earlier, he is board-certified in general psychiatry and addiction medicine. He's a distinguished fellow in the American Psychiatric Association. Unlike Dr. Somi, he is qualified by statute to opine on whether someone is competent or not. Unlike Dr. Somi, he spent approximately two hours personally with COI evaluating him in person. Unlike Dr. Somi, he consulted with other professionals treating Mr. COI, including the nurse practitioner, clinical pharmacist, and Dr. Cochran. Unlike Dr. Somi, he pointed to particular studies that show the efficacy of involuntary treatment with antipsychotic medication for restoring competency to individuals with a wide range of psychotic disorders. Dr. Grady also explained in the cell appendix that these studies about involuntary the published data on the effectiveness of antipsychotic medication in treating psychotic disorders in clinical settings. In other words, he is fully aware of more studies than are just the ones that are particularly cited in his appendix and was relying on them. What about the fact that he doesn't seem to have any data that's particular to this man's condition? Well, I think it goes to what was discussed before and partly the rareness of this condition. I know that's why he doesn't have it, but I guess to be more precise, does the government have to put on evidence that's more particularized in order to meet its burden? Absolutely not, because if there's a defendant with a very peculiar condition and there's no, not a large body of data about how the medication works for that condition, the government's expert, a medical doctor, can talk about how in his training and experience the medication that works for one sort of condition is likely to work for another. And that's basically, I think, exactly what Dr. Grady was doing here. Where's the best place in his testimony or report that he says what you just characterized him as saying? I think there's a couple things. I think there was a comment earlier about whether his appendix is particular to Mr. Coy. And I would note that in the statement of purpose for that appendix, it talks about it being designed for this particular patient. So I do think there was some thought put into whether these points were relevant to Mr. Coy in particular. And then all the rest of it about how he gave individualized attention to Mr. Coy, how he studied the prior reports that had been written about Mr. Coy, how he consulted with others. All these individual considerations support his opinion that for Mr. Coy's particular disorder, even though we might not have in the record, you know, a study that says thousands of people with this disorder were treated and how it was effective. Because Dr. Grady has the experience and understands how chemistry works, how these disorders work. He was able to say with a reasonable degree of medical certainty that the medication is substantially likely to be effective. Well, is there any place where he makes the statement that you kind of attributed to him that that he thinks he can transfer his experience with related or similar conditions to this I think if you read his report on Mr. Coy in his testimony and the appendix as a whole, that's the conclusion that you come to. As I read his report, he just kind of lists his bottom line opinion. Do you read it as more fulsome than that? Does he actually give a basis for his opinion? Absolutely. I mean, one of the bases is his individualized of Mr. Coy. Another basis is his consultation with others treating Mr. Coy. Another basis is his understanding of the literature about how antipsychotic medication works for a wide range of psychotic disorders. These are all reliable bases for his opinion. I would also note that he's not standing alone with this opinion. Dr. Dwyer was the first person to evaluate Mr. Coy to determine whether he was competent to stand trial. And although he noted that it can take longer for antipsychotic medication to address delusions such as the ones that Mr. Coy has, he said that, quote, stimulant-induced psychosis has been found to be effectively treated through the use of antipsychotic medications, even if it may take longer to treat delusional thinking than other symptoms. Dr. Cochran also similarly opined that Mr. Coy has a, quote, treatment-responsive illness and does not have comorbid conditions or extenuating circumstances that would mitigate a positive treatment response. So all of the medical professionals who are competent to opine on whether Mr. Coy is competent have agreed that the medication is substantially likely to work. I'd also point the court to its prior opinions in United States v. Fazio, United States v. Mackey, and United States v. Curtis. And basically, what those opinions say is for this particular factor, the district court can rely on a competent expert's testimony about whether the medication is substantially likely to work. And it's not clear error for a district court to credit an expert's credible testimony. And I think that's exactly what the district court did here. There was a qualified expert who opined on this subject. The other expert quibbled with the bottom line but also had statistics that I think are generally supportive. And the district court decided to credit the opinion of the most credible expert, the most qualified expert, I should say. And that, I do not believe, is clear error. Oh, I'm sorry, Judge Shepard, did you have something? Yes, I do. Can you hear me? I can hear you, yes, sir. Okay. One thing I noted is that Dr. Somi had not personally interviewed or personally treated the appellant. Dr. Grady had personally interviewed him or treated the appellant, but it was for two hours. That's the number that I recall from what I read. Okay. What about that? Is that a significant time period? Is there anything in the record that tells us that that is a typical amount of time for an expert or a doctor to treat or personally interview a patient in this situation? I think, to directly answer your question, no, there is no testimony on that exact point. However, there is no testimony to the contrary, certainly. And keep in mind that in addition to personally evaluating Mr. Coy, Dr. Grady reviewed all the reports that had been generated before, and he consulted with the individuals who were treating Mr. Coy. So I think those things combined, you know, two hours is a fairly significant amount of time. And I think combined with all the baseline knowledge he had from the written materials would have been plenty of time to allow him insight into Mr. Coy's particular disorder. Just touching briefly on Dr. Grady's personal experience treating patients with amphetamine is a big issue at all. Experts do not need to opine based on their personal experience. The fact that he had treated a low number of people with this particular disorder and couldn't recall in the moment what the outcome was, I don't think discredits his testimony in anything approaching a material way. And I don't believe the district court did either. Well, I think the question was whether he had any information about people with amphetamine-induced sequences. He said he knew of five but couldn't recall whether they recovered. Was he claiming that he knew of others in that category, or was he strictly relying on delusional patients in general? I think what he was relying on was his general understanding of the disorder and how it relates to other disorders that he has experienced treating and that the studies that he was relying on have addressed. I think just because Mr. Coy happens to have a specific, what appears to be fairly unusual, longstanding disorder that causes him to have these delusions, that doesn't mean that he's necessarily materially different from other patients with other psychoses. And I think the fact that the studies that are in the record support that antipsychotic medication is effective across a range of disorders, there's no reason to believe that Mr. Coy's disorder will react in any different way. I'd also note that as I read Dr. Somi's testimony, the issue that he was getting hung up on was the responsiveness of longstanding delusions to antipsychotic treatment. And as courts have been recognizing more recently, the literature simply does not support that position anymore. That's an outdated view. The Herbal study and the Cochran study that were referred to in the Cell Appendix, they explain, I think quite persuasively, that the more common current view is that delusional disorders do respond to antipsychotic medication. So to the extent Dr. Somi was relying on the outdated studies, and we don't know because he hasn't identified the particular studies he was relying on, I think that's a further reason not to credit his opinion over Dr. Grady's opinion. I see that my time is almost up, but just touching very briefly on the fourth prong of the cell analysis, this is the medically appropriate prong. Here, as the government stated in its brief, I think the expert agreed. There's no evidence in the record that that this medication is medically inappropriate. Dr. Somi was asked if his patient was willing and anxious to try any kind of medication, would he give them this medication? And he said, yes. I think we can conclude that Dr. Somi would not be willing to give a patient medication that he did not think were in their medical best interests. So on that point, it seems to me it's fair to say that the expert testimony was unanimous. Also, there's evidence in the record about all the things that, all the issues that Mr. Coy was experiencing. Dr. Grady said his symptoms were moderate to severe and the impact of the disorder on his life is moderate to severe, and the medication would treat that. If there are no further questions, I'll ask the court to affirm. All right. Thank you for your argument. Ms. Kirst, we'll give you two minutes for rebuttal if you'd like to reply. You'll have to turn on your microphone first. All right. That would help. With respect to Dr. Dwyer's opinion, page 12 of his report, treatment is often effective for tangential improvement of delusional beliefs. He does not say for restoration competency. He says tangential improvement. Dr. Cochran says, page 10 of, this is his first report filed June of 2018. The prognosis is fairly good. Individuals treated for first psychotic episodes typically respond favorably once correct medication and dose is established. But if you go to the cell appendix document 71-1, top of page four, the third paragraph says patients, it repeats the same principle. First psychotic episode are comparatively easier to treat. But what he is quoting from here, what he's referring to are the American Psychiatric Association practice guidelines for the treatment of patients with schizophrenia. Schizophrenia and amphetamine induced psychosis that persists for years past point of intoxication are comparing apples and oranges. With respect to the fourth prong of the cell test, Somi said, if Mr. Coy consented, consent in this type of situation requires informed consent, knowing all of the possible side effects that you might face, even those that are rare, but which can cause death, you still are willing and want to be treated with antipsychotic medication. So the hypothetical posed to Dr. Somi itself does not cover the facts of this case. Mr. Coy does not want to take any life-threatening risks that could potentially result from antipsychotic medication. And finally, just because it's hard to prove, we don't give the government cut them some slack because it's difficult. They still bear the burden of clear and convincing evidence. Thank you very much. All right. Thank you to both counsel for your argument.